# THE SUSSEX COUNTY MUTUAL INSURANCE CO. *vs.* WOODRUFF.

1. W. brought a suit to recover on a lost policy of insurance; on the trial he was sworn to prove the loss of the policy; he testified that the policy had never come to his hands; that he had never received it; that he had searched for it among his papers, and that he had no such paper in his custody or under his control. *Held* that the proof was sufficient to establish the loss of the policy.

2. The representations, declarations and admissions of an agent, so far as they refer to acts which he is authorized to perform, are binding upon and conclusive against his principal.

3. Where a mortgage is held as collateral security for the payment of a debt, the holder of such mortgage has an insurable interest in the property covered by the mortgage to the amount of his claim upon the property.

. 4. If a party insures property as owner, in which he has only a qualified interest, the insurance will be valid, unless at the time of effecting the insurance the insured used some artifice, or made fraudulent repre-

sentations that misled the insurer, and prevented inquiry as to ownership. The mere fact of the insured not disclosing his ownership at the time of effecting the insurance will not avoid the policy.

5. In an action of covenant against an insurance company to recover an insurance, the defendants cannot show on the trial that at the time the insurance was effected, the insured misrepresented his interest in the property, unless it is expressly pleaded that such misrepresentations were made.

6. Where a party, holding a lien upon real estate to secure a debt, effects an insurance upon such property, in case of a loss the insurance company on paying the insurance, will be entitled to the benefit of the security held to the amount they have paid; and if they pay the insured the whole amount of his claim for which he holds such security, they will have a right to the whole of the security held by him.

7. If the insured holds other securities for the same debt, on paying to him his whole claim, the insurers will be entitled to all the securities.

8. If, after effecting such insurance, the insured parts with any of his securities, or a part of his claim is paid, the insurer will only be liable on his insurance to the amount remaining unpaid.

9. But if the insured parts with a portion of his securities, or receives a part of his claim after the suit is commenced, it does not affect the case; the equitable claims between the parties cannot be left to the jury on the trial; their rights must be determined as they stood when the suit was commenced, and if the insurer has any remedy, he must resort to a court of equity.

10. If A has a lien upon two funds out of which to pay his debt, B, who has a lien upon one only of those funds, can compel A to resort to the fund first which he holds exclusively.

---

In error to the Supreme Court.

An action of covenant was brought in the Supreme Court by Ebenezer B. Woodruff against the Sussex County Mutual Insurance Company, upon a lost policy of insurance. The cause was tried at the Morris Circuit, at the October Term, 1855, and a verdict rendered for the plaintiff. Final judgment was entered on that verdict in the Supreme Court, at February Term, 1856. To reverse this judgment, a writ of error was brought, removing the cause into this court.

The facts for a proper understanding of the case sufficiently appear in the opinions delivered in this court.

*Leport* and *Little*, for plaintiff in error.

*Vanatta* and *Whelpley*, for defendant.

Insurance Co. v. Woodruff.

The opinion of the court was delivered by

The CHANCELLOR. This is a writ of error to the Supreme Court. It brings up for our review a large number of exceptions, which were taken during the progress of the trial before a jury at the Circuit. Many of these exceptions were not relied upon on the argument here. I shall notice only such of them particularly as were most prominently presented for our consideration by counsel.

The action is one of *covenant*, brought upon a lost policy of insurance. It was necessary, in order to enable the plaintiff to maintain his action, to prove, first, the execution and delivery of the policy; and, second, that the policy was lost; then it would be competent for him to prove the contents of the policy, or to give a copy of it in evidence.

After having produced several witnesses for the purpose of proving these preliminary matters, the plaintiff offered in evidence a copy of the alleged lost policy of insurance, " to which the defendants, by their counsel, objected, on the ground that there was not sufficient proof of search for and of the loss of the original policy of insurance, if one was issued, to justify the reception of a copy; but the court held and decided the proof of such loss was sufficient, and allowed the said draft to be offered in evidence to the jury, to which decision and ruling of the court the defendants prayed a bill of exceptions."

It will be perceived that this exception brings up the single question, whether there was sufficient evidence of the loss of the policy. We must assume that the evidence satisfactorily established the execution and delivery of the policy; because the objection to the admission of the copy was not on the ground of the want of sufficient proof of the original. The objection was confined to a want of proof of the *loss* of the original. The secretary had testified that he had no reason to doubt that the policy was issued and sent. He said he did not deliver it to the plaintiff personally; and how he sent it he was unable to state.

The plaintiff was then himself sworn, and testified that the policy had never come into his hands; that he had never received it; that he had searched for it among his papers, and that he had no such paper in his custody or under his control. This evidence was, I think, sufficient to establish the loss of the policy; and that the judge was therefore right in his decision upon that point. The object of the proof is merely to establish a reasonable presumption of the loss of the instrument, and it is a preliminary inquiry addressed to the discretion of the judge. 1 *Greenl.*, § 558.

In connection with this exception may be properly considered an exception taken to the charge of the judge to the jury relating to the execution and delivery of the policy.

Whitfield Johnson had testified that the plaintiff, together with his counsel, had called at the office of the witness, after the fire, to inquire for the policy; that witness had informed them that he supposed the policy had been issued and sent. He further testified that he had no particular reason to doubt that the policy was made out and issued.

E. W. Whelpley, Esq., the counsel who accompanied the plaintiff to Mr. Johnson, testified that he went with the plaintiff for the purpose of ascertaining where the policy was, in order to determine what form of action to institute. He testified that Mr. Johnson said to them, several times, that he had either sent the policy to the plaintiff by mail or by private hand; he thought by mail. There was much other evidence to the same purport.

The judge charged the jury as follows: "If you believe, from the weight of the testimony, that Mr. Johnson, the acknowledged and acting agent of the company, so answered Mr. Whelpley and Dr. Woodruff as fairly to lead them to believe that a policy had been executed and sent out of the office for Dr. Woodruff, such declaration is conclusive against the company upon the question of

the execution and legal delivery of the instrument. They cannot, on this trial, repudiate the representations of Mr. Johnson, if made as contended for by the plaintiff."

In support of the exception to this part of the charge, it was insisted that the defendants below were not bound by the declarations made to Mr. Woodruff and his counsel in reference to the issuing of the policy.

Mr. Johnson was the secretary of the company. It was his duty to receive the premium notes, to attend to the making out and execution of the policies of insurance, and to deliver the policies, when perfected, to the insured. He was the authorized agent to whom it was proper for the defendant in error to apply for his policy. To him application was made, and at the time of the application, it was the duty of Mr. Johnson, as the agent of the company, to perform the act, for his principal, of delivering the policy to the defendant in error. That act, at that time, would have bound the principal. His declarations respecting the subject matter were admissible as evidence against his principal, and binding, so far as they referred to the act which he was authorized to perform. They come within the well-settled rule, "where the acts of the agent will bind the principal, there his representations, declarations, and admissions respecting the subject matter will also bind him, if made at the same time, and constituting part of the *res gestæ*." 1 *Greenleaf*, § 112; *Story on Agency*, § 134–137. The court was therefore right in charging the jury that the company was bound by the representations made by Mr. Johnson to the defendant in error and his counsel respecting the execution and delivery of the policy. I think he was right in instructing the jury, that such representations were conclusive against the company, and estopped them from denying their truth. *Chapman* v. *Searle, administrator*, 3 *Pick.* 38; *Harding* v. *Carter*, cited in *Chapman* v. *Searle, administrator*, and in *Park on Ins.* (7th ed.) 4; *First Baptist Church in Brooklyn* v. *Brooklyn Fire Ins. Co.*, 18 *Barb.* 79.

The declarations of the agent, when admitted in evidence, are the declarations of the principal. They are binding upon him to the same extent. They are conclusive as to the fact admitted, if the admission of the same fact by the principal would· have been conclusive against him. It is admitted that it was competent for the plaintiff to prove, by the declarations of Mr. Johnson, that the policy was issued and executed. Upon the faith of those declarations, the plaintiff brought his suit. Can it be that it was competent for the defendants to prove that the declarations of their agent were untrue, or were made by mistake, and thus, by the misconduct or carelessness of their own agent, appertaining to a duty which devolved upon him, deprive the plaintiff of the benefit of his suit, turn him out of· court, and subject him to the costs of a suit which was induced by the acts of their own agent? If the declarations of a principal are his own, (and upon that principle alone are they admissible at law) then to permit these defendants to repudiate those declarations, is permitting them to take advantage of their own wrong. It is permitting them to commit a fraud. If no policy was in fact issued, the defendants ought to bear the responsibility and suffer the consequences of the deception, or mistake, of their agent.

It is insisted that the declarations of Johnson were not conclusive against the company as to the fact of issuing the policy, because Johnson had no right to bind his principals as to that matter; that it was in fact making an agreement that the company, in an action against them, would not controvert the execution and issuing of the policy. It is true such is the legal consequence of the declarations; but no such agreement was in fact made. How is the case distinguishable from that of Harding v. Carter? The clerk of the defendants in that case wrote to the plaintiff, that the defendants had effected the policy. He was not directed or authorized by the defendants to give such information. The defendants offered to prove that their

clerk was mistaken, and that, in point of fact, no policy was issued. But Lord Mansfield would not permit the defendants to contradict their own representations.

It is true, if Mr. Johnson had undertaken to enter into an *agreement* that, for the purpose of any suit to be brought, the company would not controvert the issuing or execution of the policy, such an agreement would not have been binding upon the company. But this certainly is no test as to how far the declarations should be held conclusive. In Harding v. Carter, such a test did not prevent Lord Mansfield from holding that the declarations of the agent were conclusive. There, if the clerk had entered into an agreement with the defendant that, in any suit between the parties, the plaintiff would admit that the policy was effected, such an agreement would not have been binding; and yet, by holding that what the clerk did write was conclusive, the effect was precisely the same as if such an agreement had been made; the defendant, in an action of trover, was prevented, not by an *agreement* his clerk had undertaken to make, but by his *declarations*, from controverting the fact that a policy was effected. The reason why such an agreement would not be binding is obvious. From the very character of the agreement, the other party could see, and had notice that the agent was not authorized to make it. It is true the declarations, if held conclusive, are, in their legal consequences, the same in effect as the agreement. But, in the one case, the declarations are held conclusive, and the legal consequences follow, because the principal ought to suffer for the deception which his own agent has practiced upon another, or for a mistake which he has made. In the other case, the party is not the victim either of deception or mistake. In the former case, the agent had the power to mislead him, and did mislead him, by declaring that the policy was issued ; and a principal is responsible for the delinquency, or misconduct, or stupidity of his agent.

The propriety of the rule is manifest. A court ought not to suffer the principal to visit the deception or mistake of his agent upon an innocent party. If Mr. Johnson declared to the plaintiff that the policy was issued, and if that declaration is evidence for the plaintiff of that fact, it is conclusive; because, to permit the defendants to contradict the fact would only be permitting them to visit the deception or mistake of their agent upon an innocent party.

The questions as to what representations were made, and whether the proper construction was put upon them by the persons to whom they were made, were substantially and sufficiently submitted by the court to the jury.

Another exception taken was, that the judge charged the jury that the assured had an insurable interest in the property insured to the amount of the insurance at the time the contract was made. It was contended that no such insurable interest existed; that Woodruff held the mortgage simply as collateral security with other securities, for the assumption by him of certain debts which Ryerson owed; and that, whether there was such interest existing as was properly the subject of insurance, was a question of fact for the consideration of the jury, under instruction from the court as to what, in law, constituted an insurable interest. I do not think that the court infringed at all upon the province of the jury. There was no dispute as to the facts in reference to the matter of interest. All the court did was to announce the law upon the facts as they were admitted before the jury. Assuming the facts, it was a question of law to be decided by the court, whether there was an insurable interest. Was the court right in so deciding? What was the interest of the assured?

On the 18th of May, 1852, Dr. Woodruff, the defendant, entered into an agreement under seal with Richard A. Ryerson, by which the former agreed to sell and convey to the latter a property known as the "Forge pro-

perty." Ryerson was indebted to one Frederick Bronson in the sum of $1500, and to one Searing Wade. in the sum of $1000. These two debts, one Calvin Price had agreed with Ryerson to assume and pay, as part consideration of a conveyance of land made to him by Ryerson, and Ryerson held said Price's bond of indemnity in the sum of $5000, with three other individuals as security, to pay these debts. Ryerson held a bond and mortgage of one Joshua Depew to secure the payment of $4000, and another bond and mortgage of Calvin Price to secure the payment of $4112. By the agreement referred to, Ryerson was to place in the hands of Dr. Woodruff, and assign to him—

| | |
|---|---:|
| The Depew bond and mortgage of - - - | $4000 |
| Price's bond and mortgage of - - - - - | 4112 |
| Price and others' indemnity bond of - - - | 5000 |
| | $13,112 |

Out of these securities Dr. Woodruff was to pay himself for—

| | |
|---|---:|
| The Forge property - - - - - - | $3500 |
| Pay off the Bronson debt of - - - - | 1500 |
| Pay off the Wade debt of - - - - - | 1000 |
| Making - - - - - - - - | $6000 |

He was to indemnify himself against all costs, charges, and expenses, of any kind soever, which he might sustain by reason of raising out of the securities the money which he was thus obligated to pay for Ryerson and for the payment of the purchase money of the "Forge property," and was to account for the residue to Ryerson, his executors and administrators, whenever collected. Ryerson, by the agreement, was to keep the buildings on the mortgaged premises insured, or to indemnify Woodruff, if he insured them. The Depew and Price mortgages and the Price indemnity bond were assigned and delivered to Ryerson, according to the agreement, and thus Ryerson

had fulfilled his part of the agreement. Dr. Woodruff made out a deed for the "Forge property" to Ryerson. It was not delivered; and why not, does not appear by the evidence. On the land covered by the Calvin Price mortgage of $4112, which had been thus assigned, and was held by Dr. Woodruff, was a factory for fulling and finishing cloth. On the 9th day of March, 1854, the defendant in error insured himself against loss by fire in that factory.

There cannot be a doubt but that upon these facts the assured had an insurable interest. At the time of effecting the insurance, he had paid off the Wade and Bronson mortgages, amounting to $3135.17, and besides this there was due to him the sum of $3500, the purchase money of the "Forge property." He held the mortgages which had been assigned to him by Ryerson as his security for this money. A loss of the buildings by fire would lessen his security to the amount of the value of the buildings. I am at a loss to perceive why, as the assignee of the Calvin Price mortgage, under such circumstances, he had not an interest which was a proper subject of protection by insurance, as if he had actually advanced the money upon the mortgage, and taken an absolute assignment of it. The only difference is, in one case he is the *qualified* owner; in the other, he would have been the *absolute* owner of the mortgage. In both cases he holds the mortgage simply as security for a debt, and has an interest properly the subject of insurance. It may be true that he will raise all the money that is due to him out of his other securities. If he does, the plaintiffs in error will have the benefit of it. That is the risk they must run. It is against that very risk which they have insured, and that risk is a proper subject of insurance. Almost any *qualified* property in the thing insured, or even any reasonable expectation of profit or advantage to be derived from it, may be the subject of this species of contract; certainly if it be founded in some legal or equitable title." *Angell on Fire and Life*

*Ins.*, § 56. It is the general doctrine, " that any interest in the subject matter insured is sufficient to sustain an insurance of real estate. *Ib.*, § 57. In *Strong* v. *Manufacturers' Ins. Co.*, 10 *Pick.* 41, it was held that the value of the plaintiff's interest in the subject insured is not material; and therefore that the mortgagor of a house, whose right in equity had been seized in execution, had an insurable interest in the house, and that his insurable interest was not divested by a sale on execution of his equity of redemption so long as his right to redeem continues; and that in case of loss, such assured is entitled to recover the whole sum insured, if the value of the property destroyed amounts to that sum. A mortgagor and mortgagee may both insure their respective interests in the same building. The mortgagee insures his *debt;* and if before the policy expires the debt is paid, from that time the policy ceases to have any operation. The mortgagor has no interest in such a policy. If the property is destroyed by fire, the insurer, upon paying the insurance, is entitled to an assignment of the mortgage if the money paid amounts to the sum secured by the mortgage. If it is less, then he has an equitable lien upon the security in the hands of the mortgagee to the extent of the insurance money so paid. The assured had a certain and definite interest in the property insured, susceptible of being affected by loss by fire. His security for his debt was diminished in value by the fire to the amount for which he was insured, and he consequently had a right to remuneration to that extent.

Another exception was taken, on the ground that the court refused to submit to the jury a question of fraud, which was interposed against the right of the plaintiff below to recover. On the argument of this exception, it was insisted, that the plaintiff below had misrepresented his interest in the property; that he had imposed himself on the company as the *owner* of the property, and procured the company to issue a policy insuring him as the

owner, whereas he had only a mortgage, or equitable interest in the property. In his written application to the company, the assured does not disclose his interest. In the policy, the insurance is described as an insurance on *his* woolen manufactory, and machinery therein, in Branchville, according to survey on file in the office of said company. The secretary of the company, who transacted the business as the agent of the company, with Dr. Woodruff, says that he did not know that Dr. Woodruff was insuring a mortgage interest, and that if he had known that Ryerson had any interest in the property, the insurance would not have been effected. Dr. Woodruff, on the other hand, testifies that Mr. Johnson knew that it was a mortgage interest he was insuring, and that the nature of the interest was spoken of between them in the progress of the negotiation.

If it was necessary for the assured, when effecting his insurance, to disclose his interest, and his not doing so could defeat the policy, then it was a question for the jury to determine, whether there was such misrepresentation or concealment in this case as would vitiate the policy; there was evidence enough to go to the jury upon that point.

In the case of the *Columbian Insurance Company* v. *Lawrence*, 2 *Peters* 49, the assured had only a qualified interest in the property. In their application for insurance, they describe the property as belonging to them, and state it to be their stone mill. Chief Justice Marshall, in his opinion, says, " Generally speaking, insurances against fire are made in the confidence that the assured will use all the precautions to avoid all the calamity insured against which could be suggested by his interest. The extent of this interest must always influence the underwriter in taking or rejecting the risk, and in estimating the premium. So far as it may influence him in these respects, it ought to be communicated to him. Underwriters do not rely so much upon the principles as on the interest of the

assured; and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding the property from loss. Marshall, in treating on insurance against fire, *p.* 789, *b.* 4, *ch.* 2, says, "it is not necessary, however, in order to constitute an insurable interest, that the assured shall, in every instance, have the absolute and unqualified property of the effects insured. A trustee, a mortgagee, a reversioner, a factor or agent, with the custody of goods to be sold upon commission, may insure, but with this caution, that the nature of the property be distinctly specified." And to the same effect are *Carpenter* v. *Providence Washington Ins. Co.*, 16 *Peters* 470, 495; *Howell* v. *Cincinnati Ins. Co.*, 7 *Ohio R.* 286; and 2 *Am. Lead. Cases* 457. Although these decisions have not been adopted by subsequent authorities to their full extent, in reference to the necessity of a disclosure by the assured as to the particularity of his interest, it is certainly well settled that when inquiry is made respecting the interest of the proposed assurer, or where he undertakes to make a disclosure of his interest to operate upon the insurer in settling the insurance, his representations must be substantially correct, or the policy will be void. I think it may be laid down as settled, that the mere fact of not disclosing the interest will not avoid the policy, because it is as much the duty of the insurer to inquire as to the interest, as of the assured to disclose it. If that interest is misrepresented, or any artifice is used to conceal it, or to prevent the insurer from inquiry respecting it, then it is a question for the jury to decide whether the misrepresentation or concealment is of a character to have prejudiced the party, and amounts to a fraud.

But the court committed no error in not submitting this matter to the jury because it was not put in issue by the pleadings. The pleas were—first, not the deed of the defendants; second, property was not destroyed by fire in the manner as alleged; third, that the plaintiff did not

give the required notice of the loss he had sustained; fourth, that in the claim made for the loss, there appeared to be fraud within the true intent and meaning of the condition annexed to the policy, that is to say, fraud in stating the nature, character, and value of the said factory, &c.

It was not competent, under any of these pleas, for the plaintiff below to raise the issue that the assured, at the time he effected the insurance, misrepresented his interest in the property in which he insured against loss. The exception, therefore, cannot avail the plaintiffs in error.

There were several exceptions taken to the refusal of the judge to charge as to several particulars relating to the rights of the company in the securities held by the plaintiff below. None of these matters could possibly affect the right of the plaintiff below to recover in this action the full amount of the insurance, unless the judge erred in refusing to charge the jury that the plaintiff's right of recovery was in nowise affected by the conveyance of the "Forge property" to William Space. If the judge was right as to the effect of this conveyance upon the plaintiff's right of recovery, then all the questions raised as to the rights of subrogation in the company to the legal and equitable benefits of the assured in the securities which he held, were wholly immaterial, as far as this present suit is concerned.

The counsel for the plaintiffs in error contended that the assured had a lien upon the "Forge property" for the purchase money, which was $3500; that the insurance was to protect the assured from loss in a debt which Ryerson owed the assured; that the purchase money of the "Forge property" was owing from Ryerson to the assured, and constituted part of the debt which was protected by the insurance; or, in other words, if this insurance had not been effected, the lien which the defendant in error had upon the "Forge property" for the purchase money, he would have had a right to use as an in-

demnity against this loss by fire. Assuming this to be so, counsel contend that as the assured conveyed the "Forge property" to Space, the company are entitled to have credited on the amount of the loss by the fire the value of the "Forge property."

The principle is certainly well established, that the insurer is entitled to be subrogated to all the rights and remedies of the assured to obtain compensation for his loss from other persons. It is thus stated by the Chancellor, who delivered the opinion of the court in the case of the *Etna Fire Ins. Co.* v. *Tyler*, 16 *Wend.* 385, 397. "The principle of equitable subrogation or substitution of the underwriters in the place of the assured, is recognized by every writer on the subject of insurance, and is constantly acted upon in courts of law, as well as in equity; so that when the assured has any claim to indemnity for his loss against a third person, who is primarily liable for the same, if the assured discharges such third person from his liability before the payment of the loss by the underwriters, he discharges his claim against them for such loss *pro tanto*. Or, if he obtains payment from such third person afterwards, it is in the nature of salvage, which he holds as trustee for the underwriters, who had paid his loss." It is certainly true, upon these principles, that if the defendant in error had a lien upon the "Forge property" for the purchase money, whatever he could have realized out of that lien would have reduced the debt *pro tanto* which Ryerson owed him. It was that debt which was insured, and not the assured's estate in any particular property. *Angell on Life and Fire Ins.*, § 59. That lien, therefore, was on a claim which he could enforce to indemnify himself for the loss which he had sustained by the fire. Upon the principle that the insurer is entitled to every claim to indemnity, for the loss, which the assured has against a third person who is primarily liable for the same, if the defendant in error had a lien for the purchase money upon the "Forge property," the plaintiffs in error

are entitled to the benefit of that lien as it existed in the hands of the assured at the time the loss occurred. When this suit was commenced, the first of June, 1854, the accounts between Dr. Woodruff and Ryerson, according to the statement furnished by the former on the trial, show the balance of the debt due from Ryerson was $4457.24. He had not then given a deed for the "Forge property;" the title still remained in him. If he retained a lien on the property for the purchase money, and could have realized out of it $3500, the full amount, deducting that from the debt due him as stated above, it would have left a balance of $957.24 due from Ryerson to Dr. Woodruff. It was this debt that was insured. If Woodruff had a right to enforce his lien for the purchase money, and thus reduce the debt which was insured, to that right the company, upon payment of the loss, was entitled to be subrogated. Whatever other securities Woodruff had in his hands, which in law or equity he could appropriate as an indemnity for his loss, the benefit of such securities, upon the company's paying the loss, enured to them.

Suppose Dr. Woodruff, instead of applying to the company to·pay the loss, had collected his debt out of the securities other than his mortgage securities, most certainly, then, the company would have been discharged. If, then, Dr. Woodruff had the right to resort to other securities to pay the debt which was insured, if the company pay the debt, they have a right to resort to those securities to reimburse themselves. To deny this is to deny the principle that the insured is entitled to be subrogated to all the rights and remedies of the assured to obtain compensation for his loss.

To say that the company are entitled to nothing for their indemnity but the mortgage security, is to place them entirely at the mercy of the plaintiff, and leaves him to make the law to govern the rights of the respective parties. Suppose the company pay the loss, can it be that it depends upon the will of Dr. Woodruff, the assured,

and not upon principles of law and equity, whether the company shall be remunerated or not? Can it be that Dr. Woodruff may make his election—that he may resort to the other securities, and if paid out of them, leave this mortgage, out of which the company must seek their indemnity? Or, that he may raise the whole debt out of the mortgage, and thus deprive the company of the advantage which they might otherwise derive from it?

If there is a right of subrogation, it is a right which belongs to and exists for the benefit of the insurer, and which he can enforce when necessary for his protection. If this it not so, the right amounts to nothing; it is good for nothing. Now, when it is said the insurer has an interest in, or can look to the mortgage alone, and not to any collateral by which the debt is secured, the doctrine of subrogation, as an existing right in the insurer, is given up, and it is made a kind of fluctuating, or *quasi* right, which the insurer may enjoy, depending upon the caprice of the assured. Take a simple case for illustration. A is indebted to B on a bond of $5000. To secure the debt, A gives a mortgage upon a house for $5000, and another mortgage upon a hundred-acre tract of land for $5000. B, the mortgagee, insures the house for $5000, and it burns down. If B makes the mortgage debt out of the hundred-acre tract, then the insurer pays nothing, because the assured has lost nothing. But does it depend upon the pleasure of the assured whether he will enforce his debt against the hundred-acre tract, or not, at his pleasure? Or, is there a principle of subrogation, a principle of equity to the benefit of which the insurer is entitled, and which he can enforce in a court of equity, to drive the creditor to the fund which will save the insured from loss? These views, it is true, are entirely at variance with the principles and reasoning of the court in *King* v. *The State Fire Ins. Co.*, 7 *Cushing* 1; but the principles there laid down, and the reasoning to sustain them, I cannot adopt.

It is a well-established principle of equity, that if A has a lien on two funds out of which to pay his debt, B, who has a lien upon one only of those funds, can compel A to resort to the fund first which he holds exclusively. By the application of this principle, Dr. Woodruff, having a lien upon other securities besides this mortgage, the company may compel him to resort to such securities before appropriating the common fund for the purpose.

Upon payment, or a recovery, the underwriter is entitled to subrogation, at least in equity, to all the rights and remedies which the assured had to the property which is not actually destroyed, including the *spes reaperandi* from any other source. *Atlantic Ins. Co.* v. *Storrow*, 5 *Paige* 294. When this fire occurred, if the company had paid to Dr. Woodruff the debt which was due from Ryerson to the doctor, the company would have been entitled to all the securities by which that debt was secured. By paying $2000, the full amount of the insurance, the company liquidates so much of the debt, and to that amount are subrogated to the rights of Dr. Woodruff in all securities in his hands.

Ryerson was entitled to no benefit from the insurance. It was Dr. Woodruff that the company insured against loss by fire, and no one else. Whether the assured had any rights in the " Forge property " to which the company had an equitable right of subrogation, must depend upon the question whether the defendant in error had a lien upon the " Forge property " for the purchase money. That is a question not without its difficulties, under all the circumstances attending the negotiation and agreement in reference to the sale and purchase. 2 *Story's Equity Ju.* 1226, 1227, *and notes.*

But it is unnecessary for the court to decide this question, for this reason, the right of the plaintiff below to recover could not in any manner be affected by his conveyance of the " Forge property " to Space, because that conveyance was not made until after this suit was com-

menced. The rights of the parties were to be determined as they existed at the time of the institution of the suit. Nothing else was put in issue by the pleadings. If the defendant in error has been paid the debt, to protect or secure which the insurance was effected, or if he has impaired the rights of the insurer in any securities to the benefit of which the insurer was entitled, the equitable claims between the parties were not the proper subjects to be submitted to the jury in this suit. Whether, therefore, the principles of law laid down by the judge at the circuit, as to the legal or equitable rights of the plaintiffs in error by reason of the conveyance to Space, were correct or not, is immaterial. His decision deprived the defendants in error of no rights to which they were entitled.

After a careful examination of all the exceptions taken during the progress of the trial at the circuit, I can see no error committed by the judge which it is the duty of this court to correct.

ELMER, J., (dissenting.) I am constrained to dissent from the opinion of the majority, as to the error assigned upon that part of the judge's charge in which he instructed the jury that " if you believe, from the weight of the testimony that Mr. Johnson, the acknowledged and acting agent of the company, so answered Mr. Whelpley and Dr. Woodruff, as fairly to lead them to believe that a policy had been executed and sent out of the office for Dr. Woodruff, such declaration is conclusive against the company upon the question of the execution and legal delivery of the instrument."

This charge was attempted to be sustained on the argument, and could only be sustained upon the ground that, inasmuch as the action of covenant was resorted to in consequence of the representations made by the agent to the plaintiff and his attorney, it would amount to a fraud upon the part of the defendants afterwards to controvert the fact of the policy being actually executed, so that the

case came within the principle of an estoppel *in pais*.    To give this effect to Johnson's declarations, it should have been shown not only that he was the company's agent to make and issue policies, which he undoubtedly was, but that he was also empowered to settle losses and commence suits, which do not appear to have fallen within the scope of his authority.    Had he in terms agreed that the company would admit that the policy had been duly issued, such agreement would not have been binding, and would not have been conclusive against them upon the plea of *non est factum ;* and I think it perfectly clear that what he could not do directly he could not do indirectly.

Johnson's declarations to Whelpley and Woodruff were made after the policy was, or ought to have been issued, and after the loss occurred.    As the secretary and treasurer of the company, intrusted with the power of issuing policies, his declarations on the subject, made at the time the policy was, or ought to have been issued, would have been competent ; but whether declarations made afterwards, while his agency continued, were admissible in evidence, may be considered as at least doubtful.    1 *Greenl. Ev.*, § 113, *n.* That such declarations were conclusive, is not sustained by any well-considered authority.    The authority most relied on for this proposition was the case of *Harding* v. *Carter*, shortly referred to in *Park on Ins.* 4.    But the clerk's letter in that case, which was held to conclude the underwriters, was written by one intrusted with that particular duty, and probably at the dictation of the principals.    The text writers who refer to it do not consider this case as involving the question of agency.    1 *Phill. Ev.* 100 ; 4 *Stark. Ev.* 58 ; 1 *Greenl.*, § 208.

In the case of *Barry* v. *Foyles*, 1 *Pet. U. S.* 311, an individual who was the manager of a tan yard, and whose business it was to buy hides, gave written statements of the number delivered by the plaintiff, and of the amount due him on a settlement, and they were held competent evidence, upon the ground that they were admissions of

an agent intrusted to do these acts. In *State Bank* v. *Wilson*, 1 *Dev.* 484, the acknowledgment of the cashier of a bank that a note had been paid, was received, and held *prima facie* evidence against the bank. And in *Curtis* v. *Ingham*, 2 *Ver. R.* 287, where the plaintiff had left the state, and had left the whole control of his business with his wife, her admissions in relation to the authority of a third person, to whom a payment was alleged to have been made as plaintiff's agent, were admitted as evidence. These cases seem to go farther than any others, but they do not go the length of holding the admissions to have been conclusive. The case of *Coates* v. *Bainbridge*, 5 *Bing.* 58, held the letters of an agent abroad, stating the receipt of money on defendant's account, admissible, on the ground that defendant's own letter was also produced, giving the agent directions as to the money. In the case of *Bank U. S.* v. *Dunn*, 6 *Peters* 51, it was held that the president and cashier of a bank have no authority to agree that the endorser of a promissory note shall not be liable on his endorsement; it is not their duty to make such contracts, and they have power to bind the bank only in the discharge of their ordinary duties. And in *Bank of Metropolis* v. *Jones*, 8 *Peters* 12, it was held that the officers of a bank have no authority to make assurances which would release parties to a note from their obligations.

The notice and preliminary proofs required in cases of loss may be waived by the insurers, and there are numerous cases where the acts of a board of directors, or the officers or agents of an incorporated company, have been held to amount to a waiver. *Ang. L. & F. Ins.*, §§ 242-249. But all the cases, so far as I am aware, are cases where the board itself, or a committee, or some officer or agent, appearing to be intrusted with the duty of settling for the loss, have done the acts. In *Schenck* v. *Mercer Co. Ins. Co.*, 4 *Zab.* 448, the waiver was the act of the directors. In the case of *Dawes* v. *N. R. Ins. Co.*, 7 *Cow.* 462, it was held

that the president of a company had no power to waive the necessary proof. In the case before us it appears that Johnson was not charged with the duty of settling the loss or of defending the suit; and I am clear that he had no power, by admissions or otherwise, to estop the company from controverting the fact that a policy had been sealed and delivered, and that for the error of the charge on this subject the judgment ought to be reversed.

As to the question of interest in the property insured, I concur with the judge who tried the cause, in holding that the insurers had no right of subrogation to any other security than the bond and mortgage of Price. Woodruff, being the assignee of that mortgage, which covered the building insured, had, as such, an insurable interest in it, which he had a right to describe as his own property. The insurance was, in substance, an insurance to Woodruff of that mortgage debt, to the extent of the sum insured. Upon payment of that amount, it would seem that the insurers became entitled to an interest in the mortgage, and became entitled to recover it of the mortgagor. *Ang. L. & F. Ins.*, § 59. Even this right is not universally acknowledged, the Supreme Court of Massachusetts having held, after an elaborate review of the authorities, that a mortgagee who has insured the mortgaged property at his own expense and for his own benefit, is entitled, in case of loss before the payment of the mortgage debt, to recover the insurance and the mortgage debt also. 7 *Cush.* 16, *King* v. *State Mutual*. Admitting it, however, to exist, as I think is most in accordance with the weight of authority and of sound principle, I see no reason for extending the insurer's claim beyond the mortgage debt itself, so as to embrace collaterals which have no immediate connection with it. In my opinion, the insurers had nothing to do with the accounts, as between Ryerson, the assignor of the mortgage, and Woodruff, the assignee, and consequently had no claim on the collaterals held by the latter. It is clear that the mortgage debt remained due when the

fire occurred and up to the time of the trial, so that Woodruff could at any time assign it to the insurers, and thus make them the creditors, and entitled to collect the money. There was, therefore, no error in this part of the charge.

*For affirmance*—The CHANCELLOR, the CHIEF JUSTICE, and Judges VREDENBURGH, ARROWSMITH, CORNELISON, and VALENTINE.

*For reversal*—Judges ELMER and RISLEY.

CITED *in Paulin v. Kaighn,* 3 *Dutch.* 511; *Phillipsburgh Bank v. Fulmer,* 2 *Vr.* 56; *Martin v. Franklin Fire Ins. Co.,* 9 *Vr.* 142.