The Aetna Casualty & Surety Company v. Jackson.

4-6662      159 S. W. 2d 461

Opinion delivered February 23, 1942.

*John Sherrill, Howard Cockrill, Thomas R. Vaughan* and *Barber, Henry & Thurman,* for appellants.

*H. B. Means,* for appellee.

GRIFFIN SMITH, C. J. Appellee Jackson is engaged in the liquor business at Malvern. He purchased a Buick sedan February 28, 1939. Twelve $34.45 payments were financed through General Motors Acceptance Corporation. A requirement was that fire and theft insurance be carried for benefit of the loan company as its interest might appear. This protection was written by General Exchange Insurance Corporation.[1]

June 24, 1939, Jackson borrowed $500 of Malvern National Bank. The Buick was mortgaged as security. General Exchange issued its indorsement recognizing this transaction.[2]

When the policy issued by General Exchange expired at noon February 28, 1940, the bank called attention to the matter; whereupon Jackson authorized The Automobile Insurance Company of Hartford, Conn.,[3] to insure the car. A policy dated March 8, 1940, was delivered to the bank. It contained a loss payable clause in favor of this mortgagee.

March 25, 1940, Jackson paid the collecting agent of General Motors Acceptance Corporation $7.79 as premium on an extension of the insurance carried by General Exchange, the coverage being from February 28 to May 28, a period of three months.

---

[1] A New York stock company authorized to do business in Arkansas.

[2] The policy issued by General Exchange carried, in conspicuous print, a stipulation that it shall not be valid unless countersigned "by the duly authorized agent of the company at Little Rock." The agent was Elizabeth Shaver.

[3] The insurance was written by J. A. Burch, the company's agent at Malvern.

The evening of May 27, Jackson lent his car to "Dusky" Rhodes, whom he had regarded as a friend for four years. Rhodes drove into the country and returned with the explanation that upholstery around the dome light caught fire from what must have been a short circuit. He later confessed to having intentionally burned the car, and was indicted on a charge of arson. Between May 27 and trial of the suits from which the instant appeal comes, Rhodes was killed in an automobile wreck. Jackson was indicted and acquitted.

The insurance companies contend that on March 23, 1940, Jackson mortgaged the Buick to secure $400 due Abe G. Sherry for liquor.

The three companies—General Exchange Insurance Corporation, Aetna Casualty & Surety Company, and The Automobile Insurance Company of Hartford—were sued, the amount demanded being $435.16.

The Automobile Insurance Company paid the bank $312.17 and took an assignment of Jackson's note and mortgage.

In his proof of loss Jackson did not reveal there was double insurance, nor did he mention the Sherry mortgage.

In its answer General Exchange pleaded that other insurance had been procured, and that liens had been wrongfully created.

Aetna denied issuance of a policy.

The Automobile Insurance Company, like General Exchange, pleaded double insurance and unauthorized liens. It also filed a cross-complaint against Jackson for the amount it had paid the bank and for salvage received by Jackson from General Motors Acceptance Corporation. Automobile Insurance also filed cross-complaint against General Exchange for half the amount it had paid the bank, in the event Jackson should recover against it.

Trial to jury resulted in a verdict against each of the insurance companies for $435.16, with penalty of 12 per cent. and $200 as attorney's fee. No relief was

granted The Automobile Insurance Company on either of its cross-complaints. It appeals from the principal judgment, and from the court's refusal to give judgment on the cross-complaints. General Exchange and Aetna have also appealed.

*The Judgment Against Aetna.*—It is impossible to determine what the jury's views were as to any single phase of the controversies. For example, its verdict finds Aetna liable; yet this company did not issue a policy. The policy issued March 8 is captioned: "The Aetna Casualty and Surety Company. The Automobile Insurance Company of Hartford, Connecticut." Liability of the companies is apportioned.

Under coverages "A" (bodily injury) and "B" (property damage) Aetna is the insurer if a premium is paid for that class of protection. Under coverages "C," "D," "E," and "F," The Automobile Insurance Company is the insurer. "C" is related to comprehensive material damage, excluding collision or upset, for which a premium of $13.75 was paid. Aetna and Automobile Insurance severally contracted with Jackson, the provision relating to Aetna being that the company should be the insurer ". . . with respect to any one or more of coverages 'A' and 'B' for which a premium is specified and charged in Item 3 of the declaration." Since no premium was paid for coverages "A" or "B," no liability attaches to Aetna. In the second place, bodily injury, as contemplated by coverage "A," is not involved, and property damage contemplated by coverage "B" is that which the insured becomes obligated to pay ". . . by reason of the liability imposed upon him by law for damages because of injury to or destruction of property." No such liability has been imposed upon Jackson.

*General Exchange—Its Defense.*—Neill Sloan, representing General Motors Acceptance Corporation, collected $42.59 from Jackson March 25, 1940, two days after Jackson borrowed from the bank. The monthly payment of $34.45 was discharged. Notations on the receipt are: "Thirty-day ex., 35c; three mo. in., $7.79; principal, $34.45."

Jackson testified Sloan was collecting for the acceptance corporation. He did not know whether Sloan was connected with General Exchange. Sloan was quoted as threatening to repossess the car unless insurance was renewed with General Exchange. Jackson "believed" one payment was past-due, but had not requested an extension of time. This statement was modified by the explanation that he did not remember whether a request for extension had, or had not been made.

After March 25 Jackson made two additional payments. When asked whether Sloan represented the acceptance corporation, Jackson replied: "He didn't say. I paid him the insurance on the car [because] he asked for it." Jackson also testified he told Sloan the car was insured with another company. The policy indorsement is dated May 28. It shows premium payment of $7.45.

Sloan testified three installments were delinquent when Jackson made the March payment. The receipted item of 35 cents was interest on a 30-day extension. Insurance was $7.79. He admitted "requiring" Jackson to renew the insurance.

It is argued on behalf of Jackson that because he paid Sloan $7.79 for insurance, and the so-called "rider" shows the premium was $7.45, the difference of 34 cents was a commission, and Sloan, or the acceptance corporation, profited to that extent.

Sloan ascertained that Jackson had mortgaged the car to the bank. He did not, however, know other insurance had been procured. His testimony in this respect and testimony of Jackson are in conflict. Sloan admitted having forwarded Jackson's insurance premium, and said he informed General Exchange regarding the bank loan. General Exchange directed Sloan to make an investigation. The information was received April 5.

The acceptance corporation took charge of the car salvage and paid Jackson $57.60, representing the difference between salvage and the amount Jackson owed the corporation.

Whether Jackson told Sloan he had other insurance, and whether he disclosed or concealed existence of the

bank loan, were questions for the jury. As to General Exchange, the bank mortgage and coverage by Automobile Insurance Company were waived. At least we cannot say there was not substantial testimony upon which the findings could be predicated.

*The Automobile Insurance Company.*—Jackson does not contend he informed this appellant when the policy with General Exchange was purchased March 25, or that the information was given at a later period. Hence, there was no waiver of contractual terms which would render the policy inoperative if additional insurance should be procured, or if an unauthorized mortgage were executed.

*Sherry's Mortgage.*—Two defenses are interposed: no obligation existed in favor of Sherry, and Sherry was not Jackson's creditor. An indebtedness of several years' duration ran in favor of Harry Hastings.[4] Sherry, according to Jackson, was salesman for Moon Distributing Company. Hastings had charge of the distributing company's business. Jackson had been sued by Hastings.

Jackson's version of the transactions is that Hastings drew a mortgage, and he (Jackson) refused to sign it. Hastings was told the car had been pledged to the bank, and that a balance was due acceptance corporation. Jackson's testimony was that he signed the mortgage in blank, after telling Hastings it should cover a building and liquor store fixtures.

A photostatic exhibit discloses Abe G. Sherry as mortgagee. The only property pledged is "one Buick automobile, motor number 43636325, sedan 41, serial number 1345836." It recites an indebtedness of $400, evidenced by note dated March 23, 1940, payable without interest at the rate of $20 each Saturday. Upon default of two consecutive payments the entire debt ". . . may be declared immediately due and payable by the said Abe G. Sherry." Acknowledgment was by C. A. Metrailer, notary public.[5] Jackson denied knowing

---

[4] The name appears in the record as "Hostens" and "Hastings."

[5] C. A. Metrailer, according to the mortgage, is in Pulaski county. [Records in the office of the secretary of state show that a commission was issued C. A. Metrailer February 1, 1939, and expires February 1, 1943.]

Metrailer. He also denied having acknowledged the mortgage.

Jackson insists that because Hastings' name appears to have been written on that part of the mortgage which becomes a caption when the document is folded, appearing on the outside as "C. W. Jackson to Abe G. Sherry," (followed by a space for the clerk's filing notations) there is a circumstance showing substitution of Sherry for Hastings. It is apparent that "Harry Hastings" has been partially erased, and "Abe G. Sherry" overwritten. But the mortgage proper contains no such erasure. The conveyance was to Sherry, and Jackson admits the signature. It is only insisted in avoidance that the automobile was substituted for property Jackson told Hastings he would pledge, and that Sherry's name was written on the blank in the second line. Jackson claims to have paid $140 on the liquor bill ". . . after I had the argument about it."

Although service was had upon Sherry at the instance of General Exchange, he was absent when the cases were tried. Motion for continuance was overruled when Jackson agreed that Sherry, if present, would testify the $400 note and mortgage were executed in his favor in good faith, delivery having been made March 23; that when the car was burned $82 had been paid, leaving a balance of $318. June 8, 1940, there was an additional payment of eight dollars. Marginal indorsements on the mortgage indicate payments: March 30, $20; April 13, $20; April 29, $20; May 25, $22; June 8, $8.

Jackson's testimony regarding the liquor bill is in conflict. As heretofore quoted, he denied having at any time owed Sherry. This statement is reasserted.[6] Yet in denying execution of the mortgage he said: "I want to make an explanation. I owed Abe Sherry and Harry Hastings—".[7]

Jackson contended he came to Little Rock (318 Third St.) where an attorney had papers for him to sign. An emphatic statement regarding the mortgage is: "I didn't owe [Sherry] a dime and didn't pay him eight dollars."

---

[6] Transcript, p. 60.

[7] Transcript, p. 58.

Whether Sherry's name was substituted for that of Hastings after the mortgage had been signed in blank, and whether the automobile was pledged when Jackson's instructions were that other property be listed and the car be excepted—these were questions upon which the jury had a right to pass. The triers of facts could also believe Jackson's testimony that he did not owe Sherry a dime and did not pay him eight dollars. But Sherry's agreed testimony went further. He claimed three 20-dollar payments and one item of 22 dollars. These correspond with indorsements on the mortgage, and were not specifically denied by Jackson.

There may have been unauthorized substitutions in the mortgage, and Jackson may not have paid the eight dollars credited in June; yet if he recognized the mortgage after its erroneous execution and paid 82 dollars to Sherry, the fact of payment would constitute ratification. Sherry was Hastings' agent, and Hastings represented Moon Distilling Company. The obligation to Hastings is conceded. Jackson's testimony that he did not owe Sherry "a dime" might be accepted as true and still the obligation of the mortgage could subsist if Sherry were acting for Hastings or the distilling company.

There are too many suggestive circumstances to justify an appellate court in disposing of the issues with the easy declaration that only questions of fact are involved. The relationship between Jackson and Rhodes is shown to have been such as to negative a presumption that a grudge existed, or that Rhodes intended to injure Jackson financially through destruction of the property.

"Dusky" had previously used Jackson's car. The loaner's cordial attitude toward the arsonite seems to have been reciprocated. Why, then, did Rhodes become a pyromaniac and utilize his base talents at the precise time consequences might be expected to buoy the insured's bank balance? The known answer died with the destroyer.

But *is it* merely coincidental that the match was applied so soon before the policy issued by General Exchange lapsed? Was it an inadvertence that proof of loss

sent by registered mail to each of two insurance companies failed to disclose the other's risk? and that *cause* of the loss was not stated, although the form upon which proof was made provided space for this purpose.

The policy issued by Automobile Insurance Company provides that it shall be void if the interest of the insured in the automobile ". . . be or becomes other than unconditional and sole lawful ownership." A similar provision in the policy issued by General Exchange is that the company shall not be liable for loss or damage to any property insured while subject to any lien, mortgage, or encumbrance.

These stipulations, unless waived, are enforcible. Such was the holding in *Rhea* v. *Planters' Mutual Insurance Association*, 77 Ark. 57, 90 S. W. 850. A further holding was that an unrecorded mortgage worked a forfeiture, it being good between the parties. See, also, *German-American Insurance Company* v. *Humphrey*, 62 Ark. 348, 35 S. W. 428, 54 Am. St. Rep. 297. It was there held that the act of "placing" the mortgage avoided the policy, although the debt secured by it was paid before loss occurred.

It is our view that Jackson's testimony regarding the Sherry transaction was not of the substantial nature justifying a verdict that the mortgage was not ratified by payments. Identity of Sherry as a representative of Hastings, and the showing that Hastings had charge of Moon Distributing Company's business, "tie in" with the admitted indebtedness of $400 to Hastings. The court, therefore, should have instructed that a mortgage valid between the parties had been executed without knowledge of the insurers.

Result of this determination is that judgment should have been rendered against Jackson in favor of Automobile Insurance Company on the note it purchased from Malvern National Bank for $312.17, with interest from August 9, 1940. Such judgment is given here. Cost in both courts is adjudged against appellee. It is so ordered.