28 N.J. Super. 81 (1953)
100 A.2d 192
ATLANTIC CASUALTY INSURANCE COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
INTERSTATE INSURANCE COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided October 28, 1953.
*83 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Jerome S. Lieb argued the cause for the plaintiff-appellant (Messrs. Harkavy and Lieb, attorneys).
Mr. Joseph M. Jacobs argued the cause for the defendant-respondent (Messrs. Stoffer and Jacobs, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
This action raises an issue of novel impression in this State. The trial court held that the defendant Interstate Insurance Company (hereinafter referred to as "Interstate") was not liable to the plaintiff Atlantic Casualty Insurance Company (hereinafter referred to as "Atlantic") for one-half of the property damage claim paid by Atlantic, on the ground that at the time of the accident there was an undisclosed lien in breach of a provision of the policy issued by Interstate.
*84 The appeal is submitted on a stipulation of facts which, summarized, discloses that a policy of automobile collision insurance was issued by Interstate to one Charles I. Cooper, with loss payable to Fritchey & Waddell who, by virtue of a conditional bill of sale, held a lien on the insured vehicle in the sum of $1,109.40. The motor vehicle was subsequently refinanced by Mr. Cooper through the Passaic-Clifton National Bank and Trust Company, by means of a chattel mortgage in the sum of $795, from the proceeds of which the balance of $635.37, then due Fritchey & Waddell, was paid. The lien of Fritchey & Waddell was cancelled simultaneously with the execution of the mortgage to the bank. The new lien was not reported to Interstate. At the time of refinancing, a new automobile collision insurance policy was issued by Atlantic, on which the lien of the bank was noted.
Mr. Cooper's automobile was involved in an accident on November 1, 1951, and Atlantic assumed and paid the property loss amounting to $660. Upon Interstate's refusal to share the loss, Atlantic instituted this action to recover one-half thereof, predicated upon the provisions of the Interstate policy and the subrogation and assignment of the rights of Mr. Cooper to Atlantic. Interstate defended the action on the ground that the replacement loan to the bank was a violation of the terms of its policy, in that defendant had failed to notify Interstate of the new loan.
The provision of Interstate's policy upon which it relies for refusal to share the loss reads as follows:
"This policy does not apply:

* * * * * * * *
(b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy; * * *."
Atlantic contends that: (1) payment of the loss may not be avoided by reason of an immaterial technical breach of its policy, and (2) defendant is estopped from denying liability under its contract of insurance.
*85 Broadly speaking, it has always been considered that policies of insurance are contracts of the utmost good faith, and the applicant therefor is bound to deal fairly with the insurer in the disclosure of facts material to the risk. 29 Am. Jur., Insurance, sec. 540, p. 436. The function of the court is not to make contracts, but to enforce them and to give effect to the intention of the parties. Corn Exchange Nat. Bank & Trust Co., Philadelphia v. Taubel, 113 N.J.L. 605, 608 (E. & A. 1934); Basic Iron Ore Co. v. Dahlke, 103 N.J.L. 635, 638 (E. & A. 1927); Steelman v. Camden Trust Co., 22 N.J. Misc. 384, 386 (Sup. Ct. 1944); Verhagen v. Platt, 1 N.J. 85, 88 (1948). The generally accepted rule of construction is that where in written instruments the words or other manifestations of intent bear more than one reasonable meaning, they are interpreted more strongly against the party from whom they originated, unless their use by him is prescribed by law. Vailsburg Motor Corp. v. Fidelity & Casualty Co., 110 N.J.L. 209 (E. & A. 1933); Rockmiss v. N.J. Mfrs., &c., Co., 112 N.J.L. 136 (E. & A. 1934); Clott v. Prudential Ins. Co. of America, 114 N.J.L. 18 (Sup. Ct. 1934), affirmed 115 N.J.L. 114 (E. & A. 1935); Moscowitz v. Middlesex Borough Bldg. & Loan Ass'n., 14 N.J. Super. 515 (Law Div. 1951); Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238 (App. Div. 1952). It is stated in Kindervater v. Motorists Casualty Ins. Co., 120 N.J.L. 373, 376 (E. & A. 1938):
"* * * Where the language employed to express the common intention is clear and unambiguous, giving to the words their ordinary significance and taking into consideration the general design and purpose, there is no occasion for the application of the canons of construction. As in the case of other contracts, the judicial function is limited to the effectuation of the plainly expressed intention of the parties to the contract."
Cf. Serafino v. U.S. Fidelity & Guaranty Co., 122 N.J.L. 294, 299 (Sup. Ct. 1939); Cronan v. Travelers Indemnity Co., 126 N.J.L. 56, 58 (E. & A. 1941); James v. Federal Insurance Co., 5 N.J. 21 (1950).
*86 Appellant contends that the breach was merely "technical" and "immaterial," arguing that a fair construction of the pertinent clause of the policy indicates reference only to liens unreported to the company at the time of the issuance of the policy and not thereafter; that the subsequent extinguishment of the lien reported at the time of issuance of the policy and the creation of another lien to an entirely different creditor indicates no prejudice to Interstate, as the latter lien was for a lesser amount than the original sum due the creditor at the issuance of the policy. However, the record discloses that the amount of the unreported lien was for a greater sum than that due under the original lien at the time of its cancellation, the amount being approximately $160 more. This situation appears to be of real significance under the decided cases.
Counsel for the parties concede that the issue is one of first impression in this State, and the research by the court has not turned up any decision by our courts where the specific issue has been considered and determined. But we do find that it has been litigated in other jurisdictions throughout the United States and the weight of authority clearly supports the defendant's position.
Atlantic relies principally upon the three following cases: Sussex County Mut. Insurance Co. v. Woodruff, 26 N.J.L. 541 (E. & A. 1857); Medford v. Pacific Nat. Fire Ins. Co., 189 Or. 617, 219 P.2d 142, 222 P.2d 407, 16 A.L.R.2d 1181 (Sup. Ct. 1950); and Fink v. Lumbermens Mut. Casualty Co., 172 Pa. Super. 533, 93 A.2d 882 (Super. Ct. 1953). Atlantic cites a number of other cases which, we are convinced, do not support its position, as they are not factually applicable. These latter cases deal with situations where the lien of the creditor was renewed or extended. We will not enter into a discussion of those cases, but will confine our comments to the cases relied upon by Atlantic and Interstate which we think have some relevancy.
In its argument Atlantic calls our attention to the "sole ownership" provision of the policy and urges that there was no misrepresentation by the insured because he had disclosed *87 the lien of Fritchey & Waddell. We fail to find, however, that Interstate had at any time claimed a breach of the "sole ownership" provision of the policy. If there had been such a breach, the settled rule is that it would have automatically voided the policy. Hudson Casualty Ins. Co. v. Garfinkel, 111 N.J. Eq. 70, 73 (E. & A. 1932); Ambrose v. Indemnity Insurance Co. of North America, 124 N.J.L. 438, 441 (E. & A. 1940).
Atlantic concedes that "It is well settled, that where a policy of insurance provides that the insured is the sole owner of the chattel insured and that there are no encumbrances against same unless stated in the policy, it is clear that a breach of that policy will permit the company to disclaim liability." Sussex County Mutual Insurance Co. v. Woodruff, 26 N.J.L. 541 (E. & A. 1857). Atlantic argues, however, that under the authority of the Sussex case, it is a question for the jury to decide whether the alleged concealment here is of a character to prejudice Interstate.
The Sussex case is not applicable, in view of the fact that it dealt with a fire insurance policy which did not require the interest of the insured to be specifically set forth, and holding that the existence of an insurable interest was enough  that the mere fact that another interest was not disclosed did not automatically void the policy.
Atlantic discusses the Medford case, supra, stating that it is one of the leading cases in the country on the point. As a matter of fact, as will appear in this discussion, it actually represents the minority view. In the Medford case the court, in construing the language of the policy (the policy provision being precisely the same as that at issue here), held that the warranty was only applicable to liens or encumbrances existing at the time of the issuance of the policy and the failure of the insured to disclose subsequent liens did not relieve the insurer of its liability after a loss. In the Fink case the Pennsylvania court relied altogether on the rationale of the Medford case, arriving at the same result. The Medford case is discussed in 16 A.L.R.2d, Automobile *88 Insurance Encumbrances, wherein the annotator makes the following comments at page 752:
"* * * It is submitted that the reasoning of the court in the above case constitutes a rather forced attempt to give the insured protection under the policy despite the exclusion clause. It should be noted that in several of the cases in which the policy has been held void the phraseology used was practically identical with that used in the Medford Case and that in none of them was the line of reasoning employed that led the court in the Medford Case to decide against the insurer."
Similarly, in the case of Providence Washington Ins. Co. v. McKenzie, 252 S.W.2d 627 (Sup. Ct. Ark. 1952), in commenting upon the Medford case, the court stated:
"The Oregon court held that the provision was a stipulation against encumbrances existing when the insurance contract was made but not against future encumbrances on the ground that the phraseology used created an ambiguity which should be resolved in favor of the insured. This holding seems to be against the weight of authority and we merely mention it here to show the extent to which some courts go in order to protect the insured against a forfeiture of his policy. See criticism by the annotator in 16 A.L.R.2d 752."
In the case of Lambert v. New England Fire Ins. Co., 90 A.2d 451 (Me. Sup. Jud. Ct. 1952), the court discussed at length and criticized the Medford case, stating:
"We, however, do not subscribe to the reasoning of the Oregon Court and that reasoning is somewhat questioned in an annotation in 16 A.L.R.2d 736, 752, par. 8."
While it is true that there is no New Jersey case on the point at issue, our courts have generally held that the test is not whether the insurer is prejudiced by a breach of a condition in an automobile policy, but simply whether the breach in fact occurred; that such a clause as under consideration here is a promissory warranty and that the insured at the risk of losing coverage, undertakes that the automobile will not become subject to any mortgage or other encumbrances not specifically declared and described in the policy. *89 Marx v. U.S. Fidelity & Guaranty Co., 118 N.J.L. 262 (E. & A. 1937); Bosshardt v. Commercial Casualty Ins. Co., 124 N.J.L. 54 (E. & A. 1940); Whittle v. Associated Indemnity Corp., 130 N.J.L. 576, 581 (E. & A. 1943); Neilson v. American Mutual, etc., Boston, 111 N.J.L. 345 (E. & A. 1933).
"* * * However, it appears to be well established that such a provision is not unreasonable or against public policy, and, as a consequence, the unanimous rule is that, in the absence of a statutory provision to the contrary, a provision in an automobile insurance policy to the effect that there shall be no liability for loss or damage of the automobile while encumbered by a mortgage or other lien is valid and binding on the parties." 16 A.L.R.2d, supra, at p. 742.
Following which, there is a collation of cases of numerous jurisdictions of the country.
Because of its factual similarity to the present case, it is interesting to note the conclusions reached in the case of Home Ins. Co. of New York v. Springer, 131 S.W.2d 412 (Tex Ct. Civ. App. 1939). The Commercial Credit Company was the holder of a lien in the sum of $931.67 payable by the insured in 21 monthly installments, which lien was disclosed in the policy. When the indebtedness had been reduced to $256.67 the insured obtained a chattel mortgage loan in the sum of $408 from the Morris Plan Company, payable over a longer period and the earlier lien was satisfied out of that amount. The policy provided, as here, that "this Company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage or other encumbrance" not specifically described. In construing the provision, the court said:
"It cannot be said that the indebtedness secured by the second mortgage given to Morris Plan Bank was the same indebtedness secured by the allowed mortgage to Commercial Credit Company, as set out in the policy. If the new note had been for only an unpaid balance on the original indebtedness, and the debt and mortgage had been assigned to another mortgagee, an entirely different question would arise. But the difference between $256.67 unpaid on the original debt and the amount of the new note and *90 mortgage for $408 was a new obligation, of which defendant had no knowledge. We think this additional new mortgage, which plaintiff admits he made in August of 1937, and of which the company had no notice, and, of course, to which it did not assent, breached the contract of insurance and under its terms, rendered it void. (Citing cases) * * *
We can see no reason to construe the provision in the policy relied upon by defendant, as being ambiguous or uncertain in meaning. Nor is there anything in the provision that would remotely indicate that the language does not apply to encumbrances placed on the insured property after the issuance of the policy."
Vide Badolato v. Commonwealth Mut. L. Ins. Co., 62 Pa. Dist. & C. 678 (1947); Lambert v. New England Fire Ins. Co., supra.
The unsoundness of the plaintiff's argument is demonstrated in the very recent case of Motors Ins. Corp. v. Stowers, 206 Okl. 692, 246 P.2d 341 (Sup. Ct. 1952), where the policy was issued on a motor vehicle encumbered by a mortgage in the sum of $3,000. Thereafter, without the knowledge of the insurer, the owner mortgaged his vehicle for $765.30. When the loss occurred, the outstanding indebtedness on both liens was less than $3,000. The policy contained an exclusion in language identical with that here involved. In holding that the company was relieved of liability, the court stated:
"It appears to be well established that such a provision is not unreasonable or against public policy, and, as a consequence, the unanimous rule is that in the absence of a statutory provision to the contrary, a provision in an automobile insurance policy to the effect that there shall be no liability for loss of an automobile while encumbered by a mortgage or other lien is valid and binding on the parties."
Cf. Estreen v. Fire Ass'n of Philadelphia, 229 Wis. 494, 282 N.W. 573 (Sup. Ct. 1938). And see, Bridgewater v. General Exchange Ins. Corp., 234 Mo. App. 335, 131 S.W.2d 220 (Ct. App. 1939); Aetna Casualty & Surety Co. v. Jackson, 203 Ark. 839, 159 S.W.2d 461 (Sup. Ct. 1942); Interstate Fire Insurance Co. v. Sorrells, 295 S.W. 242 (Tex. Civ. App. 1927).
*91 It may not be amiss to discuss briefly the definitions of the words "while" and "any" as used in the pertinent provision of the policy. The word "while" as used in the policy "is an adverbial modifier expressing duration meaning `as long as' and is not limited to the date of the issuance of the policy but referred as well to time thereafter." Lambert v. New England Fire Ins. Co., supra; Procacci v. U.S. Fire Insurance Co., 118 N.J.L. 423 (E. & A. 1937); Home Ins. Co., New York v. Springer, supra; Vanatta v. Brewer, 32 N.J. Eq. 268, 270 (Ch. 1880); Blum & Co. v. Standard Acc. Ins. Co., 336 Ill. App. 354, 83 N.E.2d 605 (App. Ct. 1949); Zancker v. Northern Ins. Co. of N.Y., 238 Mo. App. 110, 176 S.W.2d 523, 526 (Ct. App. 1943). The word "any" clearly may and should be interpreted as meaning "all or every." Lambert v. New England Fire Ins. Co., supra; Commonwealth v. One 1939 Cadillac Sedan, 158 Pa. Super. 392, 45 A.2d 406, 409 (Super. Ct. 1946); Doherty v. King, 183 S.W.2d 1004, 1007 (Tex. Civ. App.); Orme v. Atlas Gas & Oil Co., 217 Minn. 27, 13 N.W.2d 757, 763 (Sup. Ct. 1944).
We are convinced that insured's failure to report the bank's lien was a breach of the pertinent provision of the policy, that the language of the provision of the policy is clear and unambiguous, and that the insured's breach relieved Interstate from liability for the payment of any part of the property loss suffered to the insured's automobile.
Judgment affirmed.