# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3321-24

C.V.O., III,[1]

    Plaintiff-Appellant,

v.

D.A.O., ESTATE OF C.V.O.,
JR., and ESTATE OF G.A.O.,

    Defendants-Respondents.

_____

          Argued December 16, 2025 – Decided January 5, 2026

          Before Judges Firko and Perez Friscia.

          On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3924-21.

          Michael R. Napolitano argued the cause for appellant C.V.O., III (Fuggi Law Firm, PC, attorneys; Robert R. Fuggi, Jr., of counsel; Michael R. Napolitano, on the brief).

---

[1] We use initials to preserve the confidentiality of these proceedings. R. 1:38-3(c)(9); N.J.S.A. 2A:61B-1(f)(1).

Patrick B. Minter argued the cause for respondent Estate of C.V.O., Jr. (Donnelly Minter & Kelly, LLC, attorneys; Patrick B. Minter, of counsel and on the brief; Thomas J. Coffey, on the brief).

Brian W. Shaffer argued the cause for respondent Estate of G.A.O. (Morgan Lewis & Bockius, LLP, attorneys; Brian W. Shaffer, of counsel and on the brief).

PER CURIAM

On leave granted, plaintiff John Doe appeals from the Law Division's March 18, 2025 order granting defendants, his deceased parents' estates, the Estate of C.V.O., Jr. and the Estate of G.A.O. (collectively, the Estates), motions to dismiss Doe's complaint with prejudice for failure to state a claim under Rule 4:6-2(e), and May 7, 2025 order denying reconsideration.[2] The motion court granted the Estates' motion to dismiss Doe's claims, finding Doe had previously entered a global settlement agreement (GSA), which released claims against the Estates. Having reviewed the record, parties' arguments, and applicable law, we affirm.

---

[2] We note Doe does not challenge the portion of the motion court's March 18 order granting D.A.O.'s motion to dismiss Doe's complaint with prejudice.

A-3321-24

I.

We limit our recitation of the facts to the issue raised in this appeal, as we presume the parties are familiar with the facts and procedural history detailed in our prior opinion affirming in part and reversing in part the first motion court's order dismissing Doe's complaint for failure to state a claim. See Doe v. Est. of C.V.O., 477 N.J. Super. 42 (App. Div. 2023), certif. denied, 257 N.J. 232, 257 N.J. 242, and 257 N.J. 259 (2024).

In November 2021, Doe filed a complaint against the Estates alleging: violations of the Child Sexual Abuse Act (CSAA), N.J.S.A. 2A:61B-1; negligence; gross negligence; and negligent infliction of emotional distress. He primarily alleged his parents failed to prevent the sexual abuse his minor sister, D.A.O., committed against him. In January 2022, the Estates moved to dismiss the complaint in lieu of filing an answer, which the first motion court granted in March 2022. The Estate of C.V.O., Jr.'s motion did not raise the GSA's release as grounds for dismissal.

Doe alleged D.A.O. sexually abused him multiple times when he was nine or ten years old, and the abuse began in either 1964 or 1965. His mother, G.A.O., and father, C.V.O., Jr., would leave him alone with D.A.O., which he alleged enabled her to sexually abuse him. While D.A.O. was allegedly sexually

3

abusing Doe, he "reported to his mother that [D.A.O.] was engaging in conduct that he did not like and described specifically the actions." Est. of C.V.O., 477 N.J. Super. at 50. Doe also "wrote a letter to his father describing" D.A.O.'s alleged sexual abuse. Ibid. Doe maintained his parents "knew or should have known that [D.A.O.] was sexually abusing" him. Ibid. He alleged that while his parents had "actual knowledge" of the sexual abuse, neither prevented it. Ibid. In approximately 2010, Doe "discussed with his parents 'the effect of [D.A.O.'s] abuse,'" and in 2017, Doe notified his prior counsel of the sexual abuse in an unrelated lawsuit. Ibid. Doe additionally informed his prior counsel at a consultation about D.A.O.'s alleged sexual abuse and expressed it was "a major issue affecting his mental health and instilling in him fear of his sister."

While C.V.O., Jr. was alive, Doe had filed a lawsuit "related to the affairs of [C.V.O., Jr.,] which . . . was dismissed." After C.V.O., Jr.'s death in May 2014, Doe had filed multiple actions in the Chancery Division against the Estate of C.V.O., Jr. and D.A.O. Doe "filed a caveat in the Union County Surrogate's Court seeking to block the probate of" C.V.O., Jr.'s will. "[T]he Executor of the Estate of" C.V.O., Jr. requested Doe's "voluntary withdrawal of the caveat, which . . . was denied." Thereafter, "the [e]xecutors of the Will filed an [o]rder to [s]how [c]ause and [v]erified [c]omplaint seeking probate of the Will." Doe

filed an answer, defenses, and counterclaims. The Chancery Division dismissed the probate action, but Doe proceeded on certain counterclaims, filing a new complaint against D.A.O.

To facilitate a global resolution of Doe's claims, in 2017, G.A.O. agreed to conditionally gift $1,300,000 each to Doe and D.A.O. if Doe agreed to settle his claims. Doe, his children, his spouse, D.A.O., and her children entered the GSA, which Doe signed on September 5, 2017. The GSA noted Doe's lawsuits, including his earlier lawsuit while C.V.O., Jr. was alive.

The first page of the GSA references that C.V.O., Jr. "executed a Will dated June 4, 2013, which in substantial part conveyed his assets to the then serving trustees of the Amended and Restated [C.V.O., Jr.] Revocable Living Trust" (C.V.O., Jr. Revocable Trust). "Albert Dill qualified as Executor of [C.V.O., Jr.'s] Will (the Executor)," and "Dill and . . . Bank of America, NA, are the serving co-trustees of the [C.V.O., Jr.] Revocable Trust." With respect to the C.V.O., Jr. Revocable Trust, the GSA explains, it is to be "divided into two equal separate share trusts, one for the benefit of [D.A.O.], and one for the benefit of [Doe], provided that they both survive" G.A.O.

Under the GSA, Doe released the following claims:

> Except for any action or proceeding to enforce any obligation arising out of or in connection with th[e]

A-3321-24

Agreement, [Doe] . . . release[s], relinquish[es], surrender[s], disclaim[s] and forever discharge[s]: (i) [G.A.O.], (ii) [D.A.O.], . . . (vi) Albert Dill, as Executor and Co-Trustee of the [C.V.O., Jr. Revocable Trust], (vii) Bank of America . . . as co-Trustee of the [C.V.O., Jr. Revocable Trust] . . . each individually and <u>in their fiduciary capacity</u>, from any and all actions, claims, proceedings, counterclaims, third-party claims, rights, interests, at law or in equity, now existing or whenever arising, direct, indirect, derivative, present or contingent, including any and all liabilities, damages, demands, costs, expenses, fees, including attorneys' fees, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising under federal, state or local laws, rules, regulations or ordinances, whether in tort, contract or otherwise, that he, his heirs, distributees, virtual representatives, representatives, successors or assigns ever had, now has or may have as of the Effective Date, including without limitation those that arise out of or relate in any way to (i) the Subject Litigation, (ii) the administration of the Estate of [C.V.O., Jr.], (iii) the administration of the Revocable Trust, and continuing trusts created thereunder, . . . (v) th[e] Agreement; (vi) [D.A.O. and her children]; and (vii) [G.A.O.] and the conditional inter vivos gifts contemplated herein.

[(Emphasis added).]

The GSA provides that each party confirmed they had the following: "an opportunity to discuss th[e] Agreement with legal counsel and/or professional advisors of their choosing"; "fully underst[ood] the terms of th[e] Agreement"; and executed the "Agreement voluntarily with the intent to be bound by its terms." Specifically, Doe acknowledged his agreement and "that he ha[d]

6

consulted with . . . counsel of his own selection, in connection with th[e] Agreement." The GSA states that nothing contained in the releases "shall serve to release any and all claims that any of the enumerated parties may have in the future after the [GSA's] execution."

After the GSA was presented to the Chancery Division, Doe and D.A.O. placed their agreement to the settlement terms on the record. While under oath, Doe acknowledged to the court that he had done the following: read the GSA; understood the GSA; voluntarily entered the GSA; discussed the GSA with his attorney, who he was satisfied with and who answered all his questions; and entered the agreement not having been forced or threatened in any way. As G.A.O. was not a party to the GSA, she did not sign it, but she gifted Doe the agreed upon $1,300,000. She later passed away in March 2021.

Doe filed the present complaint in November 2021. After our remand to the trial court for further proceedings, the Estates each filed answers in October 2023. The Estates and Doe petitioned for certification to our Supreme Court, which was denied in May 2024.

On September 12, 2024, Doe filed an amended complaint, adding D.A.O. as a direct defendant and vicarious liability claims against the Estates. On October 2, the Estates moved to dismiss the vicarious liability claims in lieu of

7

filing an amended answer, which a second motion court denied on November 22. On November 11, 2024, D.A.O. had also moved to dismiss in lieu of filing an answer, arguing the GSA's release barred Doe's claims against her. In December, the Estates cross-moved to dismiss, arguing the GSA's release barred Doe's claims against the Estates.

On March 18, 2025, a third motion court entered an order and accompanying letter opinion granting D.A.O.'s and the Estates' motions to dismiss. The court found the GSA was a relevant "public record" because the GSA was marked as an exhibit before the Chancery Division, and Doe and D.A.O. each "allocuted their understanding and assent to the GSA on the record in the [Chancery Division] action." It determined "the GSA and the general release contained therein bars all of [Doe's] claims against . . . the Estates" because of the following: Doe "knowingly and voluntarily signed the GSA"; Doe was aware of D.A.O.'s alleged sexual abuse before entering the GSA and acknowledged earlier discussions about the abuse with his parents; Doe "agreed to release [the Estates] from 'any and all actions,' which . . . include[d] the tort action"; "the GSA covers all claims which are predicated on past events—even if those claims have not yet accrued" because it releases "any . . . claims . . . at law or in equity, now existing or whenever arising"; the GSA is not an

exculpatory contract, as "it does not release tortious conduct that may occur in the future"; and there was no exception to precedent that settlement agreements and general releases should be honored. Regarding the application of the doctrine of laches, the court determined "[t]he Estates [we]re not prevented by laches in moving to dismiss based on the GSA," as there was no "unexplainable and inexcusable delay by the Estates nor . . . [did Doe] establish the requisite prejudice."

In April 2025, Doe moved for reconsideration on the limited issue of whether the GSA's release barred Doe's claims against the Estate of C.V.O., Jr. On May 7, the third motion court denied reconsideration, finding that "[a]t the time that the release was executed, the only party to be released that was deceased was C.V.O., Jr.," and the parties to the GSA "named the executor and [co-]trustees of the estate, rather than include C.V.O., Jr. or his estate by name." The court reasoned that the GSA's plain text demonstrates the parties released each of the fiduciaries personally and as representatives of the Estate of C.V.O., Jr. and C.V.O., Jr. Revocable Trust, respectively.

On appeal, Doe argues the third motion court erred in granting the Estate of C.V.O., Jr.'s motion to dismiss his complaint because of the following: the co-trustees of the C.V.O., Jr. Revocable Trust owed him fiduciary duties, which

9

required them to preserve the family trusts and raise the GSA without delay; the doctrine of laches bars the Estates' GSA release defenses, as the delayed assertion of the defenses was "overwhelmingly attributable" to the Estates' unjustifiable conduct, caused him harm, and was unsupported by law; and pursuant to the GSA's plain text, Doe did not release C.V.O., Jr. or the Estate of C.V.O., Jr., and Doe only released the Estate of C.V.O., Jr.'s fiduciaries "by virtue of [Doe's] status as a contingent beneficiary under the Trust Agreement."

II.

We review de novo a trial court's order dismissing a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e). See Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Arsenis v. Borough of Bernardsville, 476 N.J. Super. 195, 205 (App. Div. 2023) (quoting Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011)).

Courts may consider documents specifically referenced in the complaint "without converting the motion into one for summary judgment." Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting E. Dickerson & Son, Inc. v. Ernst & Young, LLP, 361 N.J. Super. 362, 365 n.1 (App. Div.

10

2003), aff'd, 179 N.J. 500 (2004)).  "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'"  Ibid. (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)).

"In the absence of a factual dispute, the interpretation and enforcement of a contract, including a settlement agreement, is subject to de novo review by the appellate court."  Savage v. Township of Neptune, 472 N.J. Super. 291, 306 (App. Div. 2022), aff'd in part and rev'd in part on other grounds, 257 N.J. 204 (2024).  The reviewing court must "determine 'the intention of the parties to the contract as revealed by the language used [by them.]'"  Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (alteration in original) (quoting Lederman v. Prudential Life Ins. Co. of Am., Inc., 385 N.J. Super. 324, 339 (App. Div. 2006)).  "A court's role is to consider what is 'written in the context of the circumstances' at the time of drafting and to apply 'a rational meaning in keeping with the expressed general purpose.'"  Cottrell v. Holtzberg, 468 N.J. Super. 59, 72 (App. Div. 2021) (quoting Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)).  "The burden of proving that the parties entered into a settlement agreement is upon the party seeking to enforce the settlement."  Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 438 (App. Div. 2016).

"An agreement to settle litigation is 'governed by [the general] principles of contract law.'" Globe Motor Co., 225 N.J. at 482 (alteration in original) (quoting Brundage v. Est. of Carambio, 195 N.J. 575, 600-01 (2008)). In furtherance of the strong policy of enforcing settlements, "we 'strain to give effect to the terms of a settlement wherever possible.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 603 (App. Div. 2019) (quoting Brundage, 195 N.J. at 601). "[A]ny action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced." Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 564 (App. Div. 2007) (quoting Isetts v. Borough of Roseland, 364 N.J. Super. 247, 254 (App. Div. 2003)).

In interpreting a plaintiff's settlement agreement's waiver and release that "any and all claims, rights, actions[,] and causes of action of any kind, both at law and equity, which he has, had or may have had against" a defendant, we held the plain meaning of "the release's critical . . . phrase 'any and all' allows for no exception" with respect to the "types of things" included after the phrase. Isetts, 364 N.J. Super. at 255-56. "[T]he word 'any' clearly may and should be interpreted as meaning 'all or every.'" Id. at 256 (quoting Atl. Cas. Ins. Co. v.

Interstate Ins. Co., 28 N.J. Super. 81, 91 (App. Div. 1953)). Generally, a plaintiff surrenders only "any and all" of his existing "claims, rights, actions[,] and causes of action." Ibid. "Settlements will usually be honored . . . . 'absent a demonstration of "fraud or other compelling circumstances."'" Brundage, 195 N.J. at 601 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983)).

"To the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Capparelli, 459 N.J. Super. at 604 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). However, a court reviewing "a disputed motion to enforce a settlement" is not required to hold a hearing if "the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the [court] . . . to resolve the disputed factual issues in favor of the non-moving party." Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997).

III.

A. GSA Release

We first address Doe's contention that the court erred in dismissing his complaint against the Estate of C.V.O., Jr., because it misinterpreted the GSA's

release provisions. Doe acknowledges in his merits brief that the GSA identifies Dill as the executor, recognizes Dill and Bank of America as "the [co-]trustees[,] and discusses the purposes of the Trust Agreement." Although the GSA names the executor and co-trustees, Doe contends there was no "express release in favor of C.V.O., Jr." or the "Estate of C.V.O., Jr." Stated another way, he argues the GSA's release of the Estate of C.V.O., Jr.'s executor and the C.V.O., Jr. Revocable Trust's co-trustees cannot be interpreted as a release of C.V.O., Jr. or the Estate of C.V.O., Jr. because the GSA's release does not separately name the latter two. After our de novo review of the record, we are unpersuaded.

The third motion court found the GSA's release barred "all of [Doe's] claims against" the Estate of C.V.O. Jr. As the court correctly noted, the GSA's plain language releases Dill as executor of the Estate of C.V.O., Jr. and co-trustee of the C.V.O., Jr. Revocable Trust. Further, the GSA plainly releases Bank of America as the co-trustee of the C.V.O., Jr. Revocable Trust. Under the GSA, Doe specifically released Dill and Bank of America "in their fiduciary capacity" as administrators of the Estate of C.V.O., Jr. and the C.V.O., Jr. Revocable Trust.

It is irrefutable that the Estate of C.V.O., Jr. and C.V.O., Jr. Revocable Trust are legally created entities that effectuate C.V.O., Jr.'s estate in his stead.

14

It is well-established that an estate, through its executors or administrators, stands in the place of a decedent as to any timely filed claims. See N.J.S.A. 3B:10-25 ("[A] personal representative of a decedent . . . has the same standing to . . . be sued in the courts of this State and the courts of any other jurisdiction as his decedent had immediately prior to death."); see also N.J.S.A. 2A:15-4 (stating a plaintiff may pursue a claim against a decedent's estate as a "person . . . shall have and may maintain the same action against the executors or administrators of such testator . . . as he or they might have had or maintained against the testator"). Further, it is well-recognized that executors in administrating an estate are empowered "[t]o execute and deliver agreements, assignments, bills of sale, contracts, deeds, notes, receipts, and any other instrument necessary or appropriate for the administration of the estate or trust." N.J.S.A. 3B:14-23(q). Thus, Dill and Bank of America stood in the Estate of C.V.O., Jr.'s place.

Doe clearly recognized when entering the GSA that any cognizable claims against C.V.O., Jr. had to be raised against the Estate of C.V.O., Jr. and directed to its fiduciaries. This is evidenced by the GSA's acknowledgement that "Dill qualified as [e]xecutor of C.V.O., Jr.'s" estate. As the court correctly stated, "The inclusion of their official, fiduciary duties within the scope of the release

15

cannot be interpreted to mean anything other tha[n] [Doe] was releasing claims against the beneficiary: the [E]state" of C.V.O., Jr.

Doe concedes the parties entered the GSA "to resolve disputes over" the Estate of C.V.O.'s "asset distribution and estate planning . . . in connection with earlier Chancery Division [law]suits." He specifically admits the parties entered the GSA after he filed the probate litigation related to his father's estate, and the GSA was intended "to resolve disputes over the Will and Trust Agreement of C.V.O., Jr." As particularly memorialized in the GSA, Doe entered the GSA to settle his claims at the time against D.A.O. and issues surrounding "the estate plan of C.V.O., Jr," as administered by the executor. Therefore, pursuant to the GSA's plain language, Doe released his known claims against the Estate of C.V.O., Jr.'s fiduciaries—the executor and co-trustees—which effectively released Doe's claims against the Estate of C.V.O., Jr.

We also reject Doe's argument that dismissal of his claims pursuant to the GSA is unwarranted because his sexual abuse claims were unknown or unaccrued at the time he signed the GSA. He posits that the GSA does not "apply to unaccrued child sexual abuse claims as a matter of public policy." In other words, Doe asserts his current claims against C.V.O., Jr., or the Estate of

16

C.V.O., Jr., survive because they were potentially not cognizable at the time he entered the GSA.

At the time Doe entered the GSA, we had long recognized that "[b]ecause of the unique nature of sexual abuse, which may only be discovered by an adult victim after years of repression, . . . a civil suit for sexual abuse shall accrue at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 112 (2006) (alteration in original) (quoting S. Judiciary Comm. Statement to S. 257, at 4 (Feb. 24, 1992), as reprinted in N.J.S.A. 2A:61B-1(b)); see also D.M. v. River Dell Reg'l High Sch., 373 N.J. Super. 639, 646 (App. Div. 2004) (stating "plaintiffs may have a conscious memory of the sexual abuse, but may not have reasonably discovered that the serious psychological and mental illness injury they suffer from was caused by that sexual abuse") (quoting J.L. v. J.F., 317 N.J. Super. 418, 434 (App. Div. 1999)). Therefore, under the discovery rule, Doe could have filed his claims related to D.A.O.'s sexual abuse once he realized his injuries. While a material issue of fact regarding Doe's discovery of the harm may have existed when he entered the GSA, he is still charged with knowledge of his potential claim because the GSA releases any tort action "known or unknown, foreseen or unforeseen, . . . that he, . . . ever had, now has or may

17

have as of the Effective Date" of the GSA "without limitation . . . that arise[s] out of or relate[s] in any way to . . . the administration of the Estate of [C.V.O., Jr.]." Doe did not preserve any claim. Thus, under the GSA, Doe unconditionally released claims arising from events that occurred before the parties entered the GSA.

We agree with Doe's assertion that New Jersey's public policy strongly favors affording sexual abuse victims the opportunity to bring claims. The Legislature has clearly stated its "desire to expand the rights of victims of sexual assaults and other sexual misconduct." E.C. by D.C. v. Inglima-Donaldson, 470 N.J. Super. 41, 47 (App. Div. 2021). That does not, however, thwart the enforcement of the GSA, under which Doe released any then-existing claims, whether known or unknown, in exchange for G.A.O.'s $1,300,000 payment. We note that Doe did not request to void the GSA settlement as against public policy but only to limit the application of its release, which he knowingly entered.

For these reasons, we discern no reason to disturb the court's dismissal of Doe's claims against the Estate of C.V.O., Jr. pursuant to the GSA's release.

### B. Laches

Doe next contends the court abused its discretion in failing to apply the doctrine of laches to bar the Estates' motions to dismiss based on the Estates'

18

untimely asserted GSA release and waiver defenses. He argues the third motion court unjustifiably granted the Estates' dismissal given their unexplained prolonged delay in raising the GSA defenses. Doe asserts reversal is mandated because of the following: the Estates embarked on years of appellate review instead of raising the defenses; Dill and Bank of America owed him independent fiduciary duties as a beneficiary and were bound to limit expenses such as "attorneys' fees and litigation expenses"; and he suffered harm. A review of the record demonstrates Doe's arguments are without merit.

"Laches is an equitable doctrine . . . . 'invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party.'" Fox v. Millman, 210 N.J. 401, 417-18 (2012) (quoting Knorr v. Smeal, 178 N.J. 169, 180-81 (2003)). It is a remedy that our Supreme Court has "frequently described as 'an equitable defense that may be interposed in the absence of the statute of limitations.'" Id. at 418 (quoting Borough of Princeton v. Bd. of Chosen Freeholders, 169 N.J. 135, 157 (2001)) (internal quotation marks omitted). "Laches may only be enforced when the delaying party had sufficient opportunity to assert the right in the proper forum and the prejudiced party acted in good faith believing that the right had been abandoned." Ibid. (quoting Knorr,

178 N.J. at 181). "The core" of "applying laches is whether a party has been harmed by the delay." Chance v. McCann, 405 N.J. Super. 547, 567 (App. Div. 2009) (quoting Knorr, 178 N.J. at 181). Our Supreme Court has held "laches is not governed by fixed time limits." Fox, 210 N.J. at 418.

In considering Doe's argument regarding the Estates' delay in raising the GSA release defenses, we initially recognize the matter's procedural history. In March 2022, after the first motion court granted the Estates' motions to dismiss Doe's November 2021 complaint, Doe appealed, and the first motion court's jurisdiction was removed. R. 2:9-1. After we issued our opinion in October 2023, the Estates promptly filed answers, including "the Doctrine of Waiver" defense. Relevantly, the Estates timely sought certification on October 30 before our Supreme Court and Doe cross-petitioned for certification. Doe acknowledges the matter was stayed pending our Supreme Court's review, preventing the Estate of C.V.O., Jr. "from giving formal notice of the GSA . . . for a period of months" and "that his decision to file a [c]ross-[p]etition for [c]ertification created some delay."

This procedural history demonstrates that the matter was under appellate review for two years—consisting of seventeen months before our court and

seven months before our Supreme Court.[3]  Doe's argument that the Estates had nearly two years to assert the GSA release defenses, after filing answers in October 2023, ignores that the Estates had timely petitioned for certification and he cross-petitioned.  Further, after our Supreme Court denied certification in May 2024, Doe filed his amended complaint in September, which included vicarious liability claims against the Estates.  In October, the Estates moved to dismiss the vicarious liability claims in lieu of filing answers, arguing Doe's prior withdrawal of his CSAA vicarious liability claims barred his newly asserted common law vicarious liability claims, which the second motion court denied.  In November, D.A.O. moved to dismiss Doe's complaint based on the GSA, and the Estates relatedly cross-moved in December.  The Estate of C.V.O., Jr.'s December amended answer, and the Estate of G.A.O.'s January 2025 amended answer to Doe's amended complaint, raised the GSA, release, and waiver as separate defenses.  Thus, a review of the record amply supports the court's determination that the Estates did not delay asserting the GSA, release, and waiver as defenses for Doe's claims against the Estates.  The Estate of

---

[3]  It also bears noting, as mentioned in our earlier opinion, that we addressed issues of first impression surrounding the Child Victims Act's (CVA), L. 2019, c. 120, amendments to the statute of limitations for civil sexual abuse claims and the expanded category of liable defendants.  Limited case precedent existed regarding the newly enacted CVA amendments.

C.V.O., Jr.'s litigation of its defenses did not delay the matter nor make it inequitable to permit enforcement of the GSA.

We also reject Doe's argument that the doctrine of laches bars the Estates' GSA release defenses because they failed to specifically recite their arguments in the following: the "motion[s] to dismiss" the "original complaint, filed November 17, 2021"; the "answers filed on October 30, 2023"; and the "second motion[s] to dismiss . . . , filed October 2, 2024." We again note the Estates' October 2023 answers included the waiver defense, and their earlier motions argued unsettled statutory interpretation issues. See R. 4:5-4. We discern no error in the third motion court's finding that the Estates' failure to "amend their responsive pleadings or file new motions while dipositive motions were pending d[id] not present . . . inexcusable delay contemplated by the laches doctrine." The third motion court correctly considered the relevant facts, balancing the equities and denying the doctrine of laches' application.

## C. Fiduciary Duty

Finally, Doe argues the third motion court wrongly dismissed his claims against the Estate of C.V.O., Jr. without examining whether the delay was "unexplainable and inexcusable" because the co-trustees of the C.V.O., Jr. Revocable Trust owed him a "fiduciary duty." Specifically, Doe contends the

22

fiduciaries owed him a duty as a beneficiary to not delay in filing defenses and protract the litigation.

Executors and trustees have fiduciary relationships with beneficiaries and a duty to preserve estate assets. See Est. of Dizon v. Dep't of Hum. Servs., 481 N.J. Super. 451, 462 (App. Div. 2025) (stating an "[e]state's representative must 'take all steps reasonably necessary for the management, protection and preservation of[] the estate in his [or her] possession'" (alteration in original) (quoting N.J.S.A. 3B:10-29)); see also N.J.S.A. 3B:10-23 (providing that a representative "shall use the authority conferred upon him [or her] by law, the terms of the will, if any, and any order in proceedings to which he is a party for the best interests of successors to the estate.") We further recognize that "[t]he duty of an administratrix is to do what is necessary to the administration of the estate with the degree of care, prudence, circumspection and foresight that an ordinary prudent person would employ in matters of his own." In re Est. of Risica, 179 N.J. Super. 452, 455 (App. Div. 1981).

Recognizing these fiduciary duties, we discern Doe fails to demonstrate a prima facie showing that the executor and co-trustees breached any fiduciary duty to him as a beneficiary that serves to bar the Estate of C.V.O., Jr.'s GSA release defenses under the doctrine of laches. To the contrary, Dill and Bank of

23

America were obligated to preserve the estate for all beneficiaries and to act in "good faith" and use "reasonable discretion . . . [t]o employ and compensate attorneys for services rendered to the estate or trust or to a fiduciary in the performance of the fiduciary's duties." N.J.S.A. 3B:14-23(*l*). While Doe argues they did not preserve assets and limit "needless litigation expenditures," the record demonstrates otherwise as evidenced by the defenses argued. For these reasons, we discern the court did not abuse its discretion in declining to apply the equitable doctrine of laches to bar the Estates' GSA defenses.

To the extent that we have not addressed Doe's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3321-24